

**SO ORDERED.**
**SIGNED this 18th day of May, 2012**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

/s/ Shelley D. Rucker
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

In re:                                                                  No. 10-15316
                                                                        Chapter 7
MARIE LYNN MARTELLE,

    Debtor;

D.T. McCALL & SONS,

    Plaintiff

v                                                                       Adversary Proceeding
                                                                        No.   11-1026
MARIE LYNN MARTELLE

    Defendant

**MEMORANDUM**

The Plaintiff D.T. McCall & Sons ("Plaintiff" or "D.T. McCall") has moved for summary judgment in this adversary proceeding. [Doc. No. 34].[1] The defendant debtor Marie Lynn Martelle ("Debtor" or "Defendant") has failed timely to oppose the motion for summary judgment. The court recognizes that Local Bankruptcy Rule 7007-1 indicates that "[a] failure to respond timely will be construed to mean that the respondent does not oppose the relief requested by the motion." E.D. Tenn. Bankr. L.R. 7007-1(a). However, the Sixth Circuit has cautioned lower courts that they should consider the merits of an action before dismissing a case for the procedural failure to respond to a motion. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614-15 (6th Cir. 1998) (citing *Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991)). Therefore, the court will consider the merits of the Plaintiff's motion.

The court has reviewed the motion, the briefing of the parties, the record, and the applicable law and now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. For the reasons explained *infra*, the court determines that the Plaintiff's motion for summary judgment will be GRANTED due to the absence of a genuine issue of material fact regarding whether the Debtor acted willfully and maliciously.

**I.    Background**

The Debtor filed her Chapter 7 voluntary bankruptcy petition on September 8, 2010. [Bankr. Case No. 10-15316, Doc. No. 1]. The Debtor's bankruptcy schedules indicate that she received $52,000 and $31,000, in separate amounts from her insurance company for damage her house and its contents sustained due to a fire in her home. See [Doc. No. 37-8, Excerpt from

---

[1] All citations to docket entries refer to docket entries in Adversary Proceeding 11-1026, unless otherwise noted.

Debtor's Bankruptcy Schedules, p. 2]. Schedule F attached to the Debtor's bankruptcy petition indicates that the Plaintiff is a creditor holding an unsecured, nonpriority claim of $23,894.00. [Bankr. Case No. 10-15316, Doc. No. 1, p. 24, Schedule F attached to Bankruptcy Petition].

The Plaintiff filed a proof of claim in the Debtor's bankruptcy case on September 14, 2010. [Doc. No. 37-3]. In its proof of claim the Plaintiff indicated that the amount of the claim owed to it by the Debtor was $24,014.06. The proof of claim indicates that the debt is for goods sold, including household goods and hardwood flooring. The Plaintiff attached several documents to its proof of claim relating to the debt owed by the Debtor. The first document attached is a Smith County Bond signed by the Clerk of the General Sessions Court for Smith County, Tennessee, issued on July 8, 2010 and indicating that the Plaintiff sought recovery of 25 boxes of sovereign hardwood ash flooring, a Berkline sofa loveseat and recliner, 2 Berkline loungers, a rolltop desk, a General Electric range, 2 end tables, a cocktail table, a king sleigh bed, a dresser and mirror, a five-drawer chest, and 2 nightstands. *Id.* at p. 2. The Plaintiff also attached a Return on Service of Summons indicating personal service of the complaint for possession on the Debtor, as well as a Judgment for the Plaintiff against the Debtor for possession. *Id.* at p. 3.

The Debtor executed a retail installment contract with the Plaintiff on November 20, 2009. *Id.* at p. 5. The retail installment contract describes the household goods and hardwood flooring purchased by the Debtor and stated that the buyer was "giving a security interest in the goods or property being purchased." *Id.* at pp. 5-6. The Plaintiff's security interest was perfected by the filing of a U.C.C. Financing Statement indicating that the Plaintiff was a secured party with an interest in specified collateral consisting of the household goods and hardwood flooring listed on the Plaintiff's proof of claim. [Doc. No. 37-3, p. 4]. It was filed as a fixture filing in Cannon County, Tennessee. The U.C.C. Financing Statement indicates that it was recorded in Cannon

3

County, Tennessee on November 30, 2009.

The Plaintiff filed the complaint in this adversary proceeding on March 16, 2011. [Doc. No. 1 ("Complaint")]. In its Complaint the Plaintiff asserts that the Debtor "incurred a fire loss resulting in the destruction of its collateral. Further, that the debtor received insurance proceeds for the value or replacement value of the collateral." Complaint, ¶ 6. The Plaintiff also alleges that the Debtor "converted said insurance proceeds of its collateral to her own use and/or benefit." *Id.* at ¶ 7. It asserts a claim of non-dischargeability pursuant to 11 U.S.C. § 523(a)(6).

The Plaintiff submitted excerpts from the Debtor's deposition in support of its motion for summary judgment. In her deposition the Debtor admitted that she purchased items from the Plaintiff, including a Berkline sofa, a Berkline recliner, a Berkline love seat, a rolltop desk, a General Electric range, a lounge chair, two end tables, a cocktail table, a king-sized sleigh bed, a dresser and mirror, a five-drawer chest, two nightstands, and 25 boxes of hardwood flooring. [Doc. Nos. 37-5, 37-9, Deposition of Marie Lynn Martelle ("Martelle Dep."), pp. 27-28]. The Debtor further admitted that her house and its contents sustained fire damage on April 7, 2010. Martelle Dep., p. 12. She informed the Plaintiff of the fire damage on April 7, 2010. *Id.* at p. 56.  According to an affidavit filed by an employee of the Plaintiff, she also inquired about insurance on the personal property and represented that she had homeowner's insurance covering the loss. [Doc. No. 35, Affidavit of Dallas Scott, ¶ 4].

The Debtor admitted that she received $52,000 from her insurance company for the loss of the contents of the home and $31,000 for damages to the home from the house fire. *Id.* at pp. 18-19. The total amount also included room and board expenses while she was waiting for the home to be repaired. The insurance company sent the check for the damage to the home directly to the mortgage company. *Id.* at p. 21. The check for $52,000 came directly to the Debtor. *Id.* The Debtor

4

testified that she "went directly to the bank it was wrote on [sic] and cashed the check and that's what I started to work on my house with. . . . I was waiting for the mortgage company to release money to work on the house and I used that money to work on the house." *Id.* Upon cashing the check, she locked the money in a safe in her neighbor's house. *Id.* at p. 22.

The Debtor further testified that she replaced the damaged hardwood flooring in the home, but that she had not replaced any of the household goods from the house. *Id.* at p. 32. She stated, "I have not replaced anything. I've fixed the house. That was it." *Id.* She asserted that she put a total of $83,000 into repairs to the home rather than replacing any furniture. *Id.* at p. 33. When she was questioned as to whether the insurance company assessed the damage to the home incorrectly, she answered, "It's surprising, but it doesn't take long. Number one, what the insurance company allows for someone to fix your house is not what people will work for. No one is going to work for the money that they pay to fix your house. . . ." *Id.* at p. 34. She also testified regarding her background as a sole proprietor who once ran a construction business. *Id.* at pp. 45-46. The Plaintiff contends that the Debtor's failure to use the insurance proceeds to pay the Plaintiff constitutes willful and malicious behavior as defined by Section 523(a)(6).

## II.     Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings.   *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*,

5

105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kava v. Peters*, No. 09-2327, 2011 WL 6091350, at *3 (6th Cir. Dec. 7, 2011).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

### III. Analysis

11 U.S.C. § 727 provides for discharge from debt unless excepted from discharge pursuant to 11 U.S.C. § 523. 11 U.S.C. § 727(b). 11 U.S.C. §§ 523(a)(6) states in relevant part:

> A discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt – . . .
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. §§ 523(a)(6). The creditor must prove by a preponderance of the evidence that a debt is nondischargeable under 11 U.S.C. § 523. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659 (1991). Exceptions to discharge are narrowly construed in the debtor's favor. *See Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (B.A.P. 6th Cir. 2004). In this case the Plaintiff must demonstrate both willful and malicious behavior by a preponderance of the evidence.

Whether a debt is dischargeable pursuant to 11 U.S.C. § 523(a)(6) is determined by analyzing federal law. *See e.g., J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 800-01 (Bankr. N.D. Ohio 2001) (citing *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866, 870 (Bankr. W.D. Ky. 2001); *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 388 (Bankr. N.D. Ohio 1999)). 11 U.S.C. § 523(a)(6) provides that a debt that is *both* willful *and* malicious is nondischargeable. *See* 11 U.S.C. § 523(a)(6). "[T]he judgment must be for an injury that is both willful and malicious. The absence of one creates a dischargeable debt." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). The U.S. Supreme Court has addressed the meaning of "willful" within the context of § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974 (1998). As summarized by the Sixth Circuit:

> [t]he Court held that "willful" means "voluntary," "intentional," or "deliberate." As such, only acts done with the intent to cause injury – and not merely acts done intentionally – can cause willful and malicious injury. The Court explained its holding by discussing the importance of context:
>
>> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

*In re Markowitz*, 190 F.3d at 464 (quoting *Geiger*, 523 U.S. at 61-62, 118 S.Ct. at 977). Following the lead of the Supreme Court in *Geiger*, the Sixth Circuit held that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under §

7

523(a)(6)." *In re Markowitz*, 190 F.3d at 464.

Proof of willful behavior must often be demonstrated through the use of circumstantial evidence. *See In re Jones*, 276 B.R. at 802. The bankruptcy court in *In re Jones* noted that "willful" behavior can "be indirectly established by the creditor demonstrating the existence of two facts: (1) the debtor knew of the creditor's lien rights; and (2) the debtor knew that his conduct would cause injury to those rights." *Id.*

As to the element of malice, a malicious injury occurs "when a person acts in conscious disregard of their duties or without just cause or excuse." *In re Jones*, 276 B.R. at 803 (citing *Gonzalez v. Moffitt (In re Moffitt),* 254 B.R. 389, 396 (Bankr. N.D. Ohio 2000)). A finding of maliciousness does not require a determination of ill-will or specific intent. *See In re Trantham*, 304 B.R. at 308. However, malice requires the finding of a level of conduct beyond negligent or reckless behavior. *West Michigan Community Bank v. Wierenga (In re Wierenga)*, 431 B.R. 180, 185 (Bankr. W.D. Mich. 2010) (citation omitted); *see also, JP Morgan Chase Bank, NA v. Algire (In re Algire)*, 430 B.R. 817, 823 (Bankr. S.D. Ohio 2010); *Geiger*, 523 U.S. at 64, 118 S.Ct. 974. A creditor may prove the element of maliciousness by demonstrating that "(1) the debtor has committed a wrongful act, (2) the debtor undertook the act intentionally, (3) the act necessarily causes injury, and (4) there is no just cause or excuse for the action." *In re Algire*, 430 B.R. at 823 (citing *Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228 (6th Cir. 1991), abrogated on other grounds by *Geiger*, 523 U.S. 57).

In *National Sign and Signal v. Livingston* the district court explained that the § 523(a)(6) exception applies where the injury invades a creditor's legal rights. 422 B.R. 645, 653 (W.D. Mich. 2009) (citing *Steier v. Best (In re Best)*, 109 F. App'x 1, 6 (6th Cir. 2004)). The district court quoted the Sixth Circuit decision in *In re Best* noting:

8

> Section 523(a)(6)'s term "willful . . . means deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (*injuria*) in the technical sense, not simply harm to a person." The conduct "must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice . . .

*Livingston*, 422 B.R. at 653 (quoting *In re Best*, 109 F. App'x at 6). The court in *Livingston* noted that there are three elements that a creditor must demonstrate to state a claim under § 523(a)(6): "(1) the debtor's conduct was willful and malicious, (2) it suffered an invasion of its legal rights or to the legal rights to its property, and (3) the invasion was caused by the debtor's conduct." 422 B.R. at 653 (citing *CMEA Title Agency v. Little (In re Little)*, 335 B.R. 376, 383 (Bankr. N.D. Ohio 2005)).

In this case the Plaintiff relies on portions of Tennessee's Article 9 of the Uniform Commercial Code ("U.C.C."), Tenn. Code Ann. § 47-9-101 *et seq.* for support of its motion for summary judgment. The U.C.C. defines "proceeds" in relevant part as: "to the extent of the value of collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the collateral." Tenn. Code Ann. § 47-9-102(64)(E). In addition, a "purchase-money obligation" means "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Tenn. Code Ann. § 47-9-103(a)(2). Further, "[a] security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase-money collateral with respect to that security interest; . . ." Tenn. Code Ann. § 47-9-103(b)(1).

Article 9 of the U.C.C. also provides that "[t]he attachment of a security interest in collateral gives the secured party the rights to proceeds provided by § 47-9-315 and is also

9

attachment of a security interest in a supporting obligation for the collateral." Tenn. Code Ann. § 47-9-203(f). Under Tenn. Code Ann. § 47-9-315, except in certain limited circumstances, "a security interest attaches to any identifiable proceeds of collateral." Tenn. Code Ann. § 47-9-315(a)(2). Tenn. Code Ann. §§ 47-9-501, 47-9-502, and 47-9-102(a)(40)-(41) govern fixtures and the filing of financing statements related to such fixtures.

In this case it is undisputed that the Plaintiff had a perfected security interest in both the specific consumer goods listed in the retail installment contract and in the hardwood flooring, a fixture. Plaintiff has demonstrated that it filed a U.C.C. Financing Statement with respect to its security interest and it filed a proof of claim related to the Debtor's bankruptcy. The Debtor admits that she owes a debt to the Plaintiff. *See* [Bankr. Case No. 10-15316, Doc. No. 1, p. 24, Schedule F of Bankruptcy Petition]. It also appears undisputed that the Debtor did not use her insurance proceeds to compensate the Plaintiff for the loss of its collateral due to the fire. *See* Martelle Dep., pp. 21-22, 32-34. Thus, the court finds that the Plaintiff has demonstrated the last two elements of its claim under Section 523(a)(6), *i.e,*. that it suffered an invasion of its legal rights or property and that the invasion was caused by the Debtor's conduct. *Livingston*, 422 B.R. at 653.

However, the question this court must address is whether the undisputed facts are sufficient to find that there is no genuine issue of material fact regarding whether the Debtor engaged in willful and malicious behavior sufficient to satisfy the first element of the 11 U.S.C. § 523(a)(6) claim. The court concludes that they are.

In *Whitaker v. Koenig* the district court addressed Section 523(a)(6) in the context of a debtor who operated a construction business and who informed his clients, the plaintiffs, that he needed money for their residential construction project when instead, he utilized their funds to pay his bills from other, unrelated projects. 418 B.R. 265 (E.D. Tenn. 2009). The debtor failed to

complete the residential construction, and the plaintiffs filed suit in state court. *Id.* at 270. The district court affirmed the bankruptcy court's finding of willful and malicious behavior sufficient to satisfy Section 523(a)(6). However, the parties in *Whitaker* stipulated that the debtor told the plaintiffs that he needed an additional $60,000 because of upcoming large expenses related to their home construction when in fact, he did not use the money to fund the plaintiff's home construction. *Id.* at 272, 278. The district court noted the definition of conversion under Tennessee law and stated that proof of conversion may satisfy Section 523(a)(6) in certain circumstances:

> Under Tennessee law, conversion is an intentional tort requiring proof that a party appropriated another's property for his own use by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property. An act of conversion *may* constitute willful and malicious injury if the debtor intended to cause the harm or was substantially certain that such harm would occur.

*Id.* at 275 (emphasis added) (citing *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)). The court affirmed the bankruptcy court's finding of willful and malicious conduct, noting:

> The Bankruptcy Court found appellant's actions to be "willful" because he obtained the May 19, 2006 payment from appellees not intending to use it for the reasons he represented to the appellees. . . . . Based upon a consideration of the same evidence, the Bankruptcy Court found appellant's actions to be "malicious" because appellant undertook them in conscious disregard of his duties to appellees without just cause or excuse.

*Whitaker*, 418 B.R. at 275.

In *Gibbs v. Nevels (In re Nevels)*, the bankruptcy court again addressed misuse of funds provided for residential construction. No. 06-3155, 2007 WL 2042449 (Bankr. E.D. Tenn. July 9, 2007). In that case the doctrine of collateral estoppel applied because the plaintiffs had obtained a judgment in state court in which the court found the debtor liable for fraudulent misrepresentation. The state court had also awarded the plaintiffs a judgment. *Id.* at *4. The bankruptcy court found

11

that the state court judgment and the debtor's conversion of the plaintiff's funds satisfied the requirements of Section 523(a)(6).

The *In re Nevels* court relied upon *In re Sweeney*, 264 B.R. 866 for its discussion of conversion. 2007 WL 2042449 at *4. In *In re Sweeney* the debtor purchased a motorcycle from the plaintiff who retained a security interest in the vehicle. 264 B.R. at 869. The debtor was involved in an accident that demolished his motorcycle. He received a check from the insurance company for the motorcycle that was made out to him and the plaintiff, but the debtor managed to cash the check on his own. Instead of repaying the plaintiff for the lost collateral, the debtor purchased another motorcycle with the insurance funds. *Id.* at 869. The court then explained how proof of the simple tort of conversion is not sufficient alone to establish nondischargeability pursuant to Section 11 U.S.C. § 523(a)(6):

> . . . The [Supreme] Court [in *Geiger*] stated that "not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts . . . do not suffice to establish that a resulting injury is 'willful and malicious'."
>
> In addition, many courts have determined, post *Geiger*, that the conversion of a secured Creditor's collateral is willful and malicious when the facts establish that the Debtor had the requisite intent (whether objective or subjective) to injure the Creditor. . . .
>
> Willful injury may be proven indirectly by showing the Debtor knew of the Creditor's lien rights and that the Debtor knew the conduct would cause injury to those rights.
>
> In this case, it is not sufficient, as Plaintiff argues, to show that Defendant acted intentionally and wrongfully. The Court must consider whether the Defendant acted with specific intent to harm the plaintiff. The facts as stipulated do not clearly demonstrate such an intent, but the Court infers this intent from the circumstantial evidence. In addition, the Court finds the facts establish that the Defendant, in converting the insurance proceeds for his own use, surely believed and understood that this act was substantially certain to harm the Plaintiff.

264 B.R. at 871-72 (quoting *Geiger*, 523 U.S. at 63-64). The court concluded that the debt owed by

the defendant for the motorcycle was non-dischargeable pursuant to Section 523(a)(6). *Id.* at 875. In this case, the Plaintiff did not repurchase the items that were destroyed and served as collateral.

The undisputed evidence indicates that the Debtor was aware of her obligation to the Defendant. She called immediately after the fire, inquiring about whether there were going to be any insurance proceeds. She then offered that she had homeowner's insurance herself. She made a claim for the contents. She obtained and used funds from the insurance company to conduct repairs on her fire-damaged home, even though those funds were designated for use related to the home's contents. Martelle Dep., pp. 21-22, 32-34. The court finds from the circumstances surrounding the use of the proceeds that the Debtor's actions were willful and malicious as defined by *Geiger*, rather than merely negligent or reckless without an intent to injure the Plaintiff. The court also infers from the Debtor's cashing of the check and keeping the funds in a neighbor's safe that the Debtor was keeping the proceeds from the reach of creditors. In her deposition, the Defendant also testified to having had experience in the sub-contracting business. She has been responsible for handling books and records of the company and preparing her tax returns. *See* Martelle Dep., pp. 45, 50-51.The Defendant has not responded to the motion by either affidavit or excerpts from her deposition to provide any justification or excuse for her use of the funds in a manner contrary to the Plaintiff's rights.

The court concludes that there is enough evidence of the Debtor's intent to injure the Plaintiff without just cause or excuse based on the record of undisputed facts. Therefore, the court concludes that Plaintiff's motion for summary judgment will be GRANTED.

### IV. Conclusion

As described *supra*, the Plaintiff's motion for summary judgment will be GRANTED. The court concludes that no genuine issues of material fact exist regarding whether the Debtor's

13

actions were willful and malicious as required to satisfy the requirements of non-dischargeability pursuant to 11 U.S.C. § 523(a)(6).

A separate order will enter.

# # #